ETHEL LOUISE NELSON ET AL V. MARY BUSBY ET AL

5-4803                              437 S.W. 2d 799

Opinion Delivered March 3, 1969

*Mann & McCulloch* and *Frank N. Burke, Jr.* for appellants.

*Spears & Sloan* and *Carrold Ray* for appellees.

LYLE BROWN, Justice.    Ethel Louise Nelson and Helen M. Littlefield, her guardian, appeal from a judgment in tort.    While operating her automobile on the streets of Marianna, Mrs. Nelson struck Mrs. Mary Busby, a pedestrian.    Mrs. Busby recovered for personal injuries, and her husband, Bruce Busby, was compensated for loss of consortium and medical expenses. The appeal challenges the competency of the testimony of three witnesses and urges that the trial court should have given appellants' requested instruction on unavoidable accident.    Appellee Bruce Busby appeals, objecting to the reduction of his award commensurate with Mrs. Busby's negligence.

Mrs. Busby emerged from the post office on the north side of the street and was proceeding across the street to enter a vehicle parked on the south side.    The second tier of steps in front of the post office led directly to the street curb and near the center of the block.    Just as Mrs. Busby entered the street, Mrs. Nelson pulled out from the curb where she was parked to the left of Mrs. Busby.    The Nelson car struck Mrs. Busby, ran over her body, and allegedly dragged her some twenty feet.    The jury fixed Mrs. Nelson's negligence at 65% and that of Mrs. Busby at 35%.    Neither

the fixing of negligence nor the amount of total damages is argued on appeal. The three points raised by Mrs. Nelson for reversal will be enumerated and separately discussed.

Point 1. *The court erred in permitting the chief of police to testify as to point of impact.* The investigating officer testified by deposition. Prior to trial his testimony was examined by court and counsel, at which time objections were made and some portions of his testimony were deleted, while other objections were overruled. We have examined his testimony on the question of point of impact. Here are the proceedings on direct examination for the plaintiff:

Q. What evidence did you find in your investigation as to how she started from—came from the parking spot where she was located?

A. Well, just in front of the first meter, parking meter, west of the corner, there were skid marks leading to the point of impact, which was six feet from the curb, and the skid marks indicated to me, as a police officer, a rather rapid start, but that is how I arrived at her parking place. I traced those skid marks from just in front of that first meter—those were made by the rear wheels—21 feet farther west on Main Street.

MR. MCCULLOCH:

Now, Your Honor, we object to that portion of that which says, "... indicated to me, as a police officer, a rather rapid start."

DEPOSITION CONTINUED:

Q. And 21 feet of skid marks that you could see?

A. Yes, sir, which I indicated, yes, sir.

Q. How far from the intersection would you say this accident occurred?

A.  Are you referring now to the point of impact, sir?

Q.  Yes.

A.  The point of impact was 56 feet from the intersection of Church and Main Street.

The only recited objection on direct examination is the one we have quoted and that objection referred to the officer's testimony as to "a rather rapid start." Then on cross-examination counsel for defendant pursued the subject of point of impact at length. In response to one of those questions the witness again referred to the point of impact as being approximately six feet from the curb. Thereupon this colloquy occurred:

MR. MCCULLOCH:

Just for the record, we will object to it [referring to point of impact].

THE COURT:

All right.

MR. MCCULLOCH:

We object to that part of it on the grounds that he did not make sufficient investigation, and was not qualified to state where the impact was.

That specific objection was not well taken because the officer had detailed his many years experience as a policeman and had established by his testimony that he had in fact made an immediate and thorough investigation. Appellants argue here that the establishment of the point of impact by opinion evidence was error because the jury could have drawn its own conclusion with

respect thereto. If counsel thought the conclusion of the officer invaded the province of the jury then he should have called it to the attention of the trial court.

Under this point appellants also challenge the right of the officer to state his conclusion concerning a rapid start. The trial court was correct in permitting the officer to so testify. In fact the court gave a logical reason:

> . . . police officers are familiar with skids and can tell most of the time whether one was made on starting or on stopping. In other words, whether it is a dragging of a tire that made the mark, or the spinning of a tire. I think an experienced officer could tell that . . .

It would hardly be reasonable to say that skid marks could be otherwise described to a jury so as to enable them to be equally capable with the officer in telling under what conditions they were made.

Point II. *It was error to permit Doctors Robertson and Williams to testify as to statements about the collision related to them by Mrs. Busby.* Those two doctors were treating physicians. Dr. Robertson took Mrs. Busby's history. With respect to the history he testified by deposition as follows:

> Yes, she stated she had been well until about 1:30 p.m. on the 10th of July, 1964, when, as she walked out between automobiles in front of the post office on Main Street in Marianna, Arkansas. [sic] An automobile pulled out to her left and [without apparent slowing down literally] ran over her. She was not rendered unconscious and fell, landing mostly on her right shoulder, head and back. She sustained multiple abrasions and bruises and had immediate severe head, neck, right shoulder, and general body pain. She was seen by Dr. Gray and subsequently transferred to our

hospital. Her past history revealed that she had had some heart difficulty and had been cared for by Dr. Tom Stern. In the past, she had also had some minor surgery.

Appellants' counsel objected to the foregoing testimony as being hearsay. The trial judge struck from the deposition that phrase we have bracketed. Dr. Williams also took a history and testified as follows:

> She stated that she stepped off the sidewalk on to the street at Marianna, Arkansas, on July 10th, 1964, when an automobile struck her and ran over her body. She stated that the automobile dragged her body, with the body being caught under the undersurface of the vehicle, and during this injury she sustained multiple abrasions [and was brought to the Baptist Hospital emergency room where she was seen by Dr. Robertson, and then he called me to see her in consultation].

Appellants' counsel challenged the foregoing testimony as being hearsay. The trial judge deleted from the deposition the bracketed phrase.

In *St. Louis, I.M.&S. Ry.* v. *Williams,* 108 Ark. 387, 158 S.W. 494 (1913), our Court said:

> Testimony relative to the statements made by the injured person to his attending physician as to how the accident happened, and what caused it, is not admissible in a suit to recover for alleged negligent injury. It is but hearsay, when not a part of the *res gestae,* and the fact that it is recited by the physician to whom it was related as the history of the case when the injured person sought treatment for the injury, does not make it any the less so.

Again, in *Mutual Benefit Health & Accident Ass'n.* v. *Basham,* 191 Ark. 679, 87 S.W. 2d 583 (1935), we held

that statements by an injured person to his attending physician "as to how an accident happened and what caused it is not admissible." Compared with other jurisdictions there has been very little development of our case law on this question. In many other states the stricter rule as exemplified in *Williams* has been relaxed. In fact, one of our leading authorities states the more logical rule to be that statements given "by the patient to the doctor for treatment which describe the general character of the cause or external source of the condition to be treated, so far as this description is pertinent to the purpose of treatment" should be looked upon with trustworthiness. He goes further and points out that professional standards require the assembling of that information from the patient "and the person treated will be fully conscious that his treatment may well be affected by his report as to the cause, whether a fall, a crushing by a heavy object, or a collision." McCormick Evidence HB § 266 (1954). However, he points out that other features of the incident, such as who was at fault, would seem unrelated to the treatment.

It is not necessary in the case at bar to deviate from, or relax, the rule in *Williams*. That is because it is clear to us that the challenged testimony of the doctors was not prejudicial; their recount of the incident was cumulative to the testimony of every eye witness, including the sister of Ethel Louise Nelson. In that connection we would point out that the *Williams* case was reversed because the doctor's testimony was found to be prejudicial. In that case no witnesses corrorated plaintiff's testimony as to the manner of the accident, whereas all of the railroad's witnesses denied there was any sudden jerking of the train as alleged by the plaintiff. The only witness which tended to support her, and prejudically so, was her doctor, who was permitted to recount what plaintiff had told him in reciting plaintiff's version of the cause of the accident. In that situation it was this Court's opinion that the doctor's testimony tended to improperly bolster plaintiff's case.

In appellants' reply brief they challenge the testimony of the two doctors with reference to two other physical complaints related by the patient in the course of treatment. Mrs. Busby complained of pain in one eye. As a result of that complaint the doctor found a recent onset of positive scotoma; however, he concluded that the eye complaint had no connection with the accident. The other point was with reference to her complaint about becoming stooped in the shoulders since the accident. Again, her own doctor testified in his opinion there was no connection between this complaint and the accident. We can perceive no prejudice when her own doctors related both complaints to other causes. We would also point out that a challenge made in a reply brief to matters not raised in the original brief cannot be considered because in that event appellee has no opportunity to reply. *O'Dell* v. *Young,* 210 Ark. 1073, 199 S.W. 2d 971 (1947). Appellants' counsel mentioned the subject matter in oral argument and appellees' counsel endeavored to answer it as best he could from personal recollection of the testimony. The fact that he attempted to answer the argument is hardly sufficient to constitute a waiver.

Point III. *The court should have given the requested instruction on unavoidable accident.* The defendants requested the giving of AMI 604 covering an unavoidable accident. Of this point little need be said because this mishap would certainly not have occurred except for negligence on the part of the driver or the pedestrian, or both. The usual circumstances which justify the giving of the requested instruction are not here present. *Cannor* v. *Cooper,* 245 Ark. 386, 432 S.W. 2d 761 (1968).

*CROSS-APPEAL.* Appellees, by cross-appeal, ask us to correct the judgment entered in favor of Bruce Busby, husband of Mary Busby. The jury found his total damages to be $5000 and the trial court entered judgment for $3250 because Mary Busby was found to

have been 35% negligent. We think appellees' contention is fairly answered in the negative by our own case of *Sisemore* v. *Neal*, 236 Ark. 574, 367 S.W. 2d 417 (1963). There we held that the husband's right to special damages for his loss of consortium and his wife's medical expenses was derivative. It is only logical that since his cause of action is derivative, Mr. Busby can have no better standing in court than is vested in his wife.

The judgment is in all respects affirmed.