[No. 5856–5–III.   Division Three.   March 7, 1985.]

JOHN D. CHRISTIE, ET AL, *Appellants,* v. MIKE
MAXWELL, ET AL, *Respondents.*

*Jerry T. Dyreson* and *Taylor & Dyreson,* for appellants.

*Irving B. Paul, Kenneth Kato,* and *Huppin, Ewing, Anderson & Hergert,* for respondents.

McINTURFF, A.C.J.—Merisue Christie appeals a ruling that her $8,000 judgment for loss of consortium be reduced 62.5 percent, the amount of contributory negligence attributed to her husband. We reverse.

On September 25, 1980, John Christie was driving alone on a motorcycle which collided with a car driven by Mike Maxwell. Following a jury trial, the damages of $8,000 awarded to Mrs. Christie for loss of consortium were reduced by 62.5 percent, the percentage of negligence attributed to Mr. Christie.

Mrs. Christie has appealed from the reduction of her consortium award, arguing even though the action could be defined as derivative, RCW 4.22.020[1] bars imputing the negligence of one spouse to the other spouse. In tandem with the statutory grounds is our recognition of the development of individual rights, separate and apart from marital and/or familial relationships, seen in recent case law. The issue thus presented is whether Mrs. Christie's individual cause of action can be affected by her husband's percentage of negligence.[2]

---

[1]RCW 4.22.020 provides:

"The contributory fault of one spouse shall not be imputed to the other spouse . . . to diminish recovery in an action by the other spouse or the minor child of the spouse, or his or her legal representative, to recover damages caused by fault resulting in death or in injury to the person or property, whether separate or community, of the spouse. In an action brought for wrongful death, the contributory fault of the decedent shall be imputed to the claimant in that action."

[2]Mr. Maxwell has raised several preliminary objections regarding Mrs. Christie's failure to object to certain jury instructions regarding this issue and her failure to satisfy RAP 10.4(c) which requires the appellant to include a copy of the jury instruction with her brief. Since the issue presented is strictly a legal ques-

Mr. Maxwell contends Mrs. Christie has not suffered an injury, that her loss of consortium was derivative through her husband's injury, and that she could suffer no greater loss than he. Additionally, Mr. Maxwell argues the statute does not apply as the amended statute refers to claims arising after July 26, 1981, and the accident in this case occurred September 25, 1980.

With respect to his second argument, in *Godfrey v. State,* 84 Wn.2d 959, 530 P.2d 630 (1975), the court ruled RCW 4.22 applies to acts committed prior to its effective date but for which liability is established after that date. The statute has remained essentially the same since the only amendment added in 1981 referred to a wrongful death action. We hold the statute to be applicable.

We next address Mr. Maxwell's argument that the statute is inapplicable because Mrs. Christie's rights were derivative from her husband's. Although the husband's right to damages for loss of consortium of his injured wife was recognized early in Washington (*Hawkins v. Front St. Cable Ry.,* 3 Wash. 592, 595, 28 P. 1021 (1892); *Zolawenski v. Aberdeen,* 72 Wash. 95, 97, 129 P. 1090, *aff'd,* 75 Wash. 700, 135 P. 470 (1913)), the wife's corresponding right was not granted until 1980. *Lundgren v. Whitney's Inc.,* 94 Wn.2d 91, 614 P.2d 1272 (1980) established a wife's right to claim loss of consortium when her husband is injured. It overruled *Ash v. S.S. Mullen, Inc.,* 43 Wn.2d 345, 261 P.2d 118 (1953), which denied loss of consortium damages to a wife whose husband had been injured in the course of his employment.

In *Thompson v. Grange Ins. Ass'n,* 34 Wn. App. 151, 161–62, 660 P.2d 307 (1983), cited by Mr. Maxwell, the court considered the wife's right to insurance coverage for loss of consortium due to injury to her husband, who was involved in an accident with an uninsured motorist. The court held that the wife was entitled to benefits, but

---

tion involving a particular jury instruction, we hold there was no failure to preserve error.

because she did not suffer a separate bodily injury she was limited to the single limits of the policy and was not entitled to a separate claim. The court stated at pages 161–62:

> We next observe the widely held rule that damages for loss of consortium are consequential, rather than direct, damages. They necessarily are dependent upon a bodily injury to the spouse who can no longer perform the spousal functions; it does not arise out of a bodily injury to the spouse suffering the loss.

(Citations omitted.) Based on the above, Mr. Maxwell concluded the action for loss of consortium was derivative and the damages must be reduced in proportion to the comparative negligence percentage.

However, we take recognition of a trend in the law to establish a separate legal identity for each individual, despite his or her familial or legal relationship to another. This trend is contrary to the rule announced in *Ostheller v. Spokane & I.E. R.R.,* 107 Wash. 678, 685, 182 P. 630, 633 (1919), where the court reversed a damage award on behalf of a wife who was killed with her husband in an auto–train collision. The court imputed the contributory negligence of the husband to the wife because "[t]he community of husband and wife is, under our laws, a legal entity in which the individuality of both spouses is merged . . ."

In *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972), the court ruled that the doctrine of interspousal immunity was no longer viable in light of modern reality. The trend continued with the adoption of the comparative negligence statute in 1973, amended in 1981 and codified at RCW 4.22.005 and 4.22.020. The meaning of the statute was explored in two law review articles shortly after the statute took effect in 1973. Smith & Campbell, *Symposium: Recent Washington Legislation, Comparative Negligence,* 49 Wash. L. Rev. 705 (1974) and *Survey of Washington Law, Torts,* 9 Gonz. L. Rev. 228, 232 (1973) arrive at the same conclusion with respect to the growth of individual identity. Particular note should be paid to 49 Wash. L. Rev. at 706 n.6:

Sections 1 and 2, read together, suggest that the Legislature intended each spouse's recovery to be diminished in proportion to the percentage of negligence attributable to the negligently acting spouse; imputed negligence lessens but does not bar recovery. This is consonant with the mandate of Section 1 that "any damages allowed shall be diminished in proportion to the percentage of negligence attributable to the party recovering." But when read alone, the absolute prohibition of Section 2 that "the negligence of one marital spouse shall not be imputed to the other spouse . . ." appears to prohibit considering the acting spouse's fault when comparing the negligence of the other; to do so would be [to] "impute" one spouse's negligence to the other. The first interpretation reduces Section 2 to a mere expression of an obvious inference from Section 1; the latter interpretation seems to express better the probable legislative intent.

In conjunction with the legislative change are several Washington cases which support our view of the integrity of the individual identity. In *Lund v. Caple,* 100 Wn.2d 739, 675 P.2d 226 (1984), the issue was whether the cause of action for loss of consortium could be maintained without joinder of the other spouse's underlying tort claims. Citing W. Prosser, *Torts* § 693(g) (1976), the court stated at page 744:

Loss of consortium relates to the "'loss of love, affection, care, services, companionship, society and consortium . . .'". *Lundgren,* at 94. As such, the alleged injuries relate solely to the "deprived" spouse and are distinguishable from the cause of action of the "impaired" spouse. The better rule is that a "deprived" spouse may sue for loss of consortium damages by either joining in a lawsuit with the spouse who sustained primary injuries or by bringing an independent suit.

We conclude the Supreme Court has characterized the action as separate and independent rather than derivative.

In accord is *Grange Ins. Ass'n v. Hubbard,* 35 Wn. App. 407, 667 P.2d 121, *review denied,* 100 Wn.2d 1023 (1983), where the insurer of a parent whose child was killed while knowingly riding in a stolen vehicle sought a declaratory judgment to contest the applicability of the parent's under-

insured motorist coverage. The court stated at page 413:

> We hold the mother has an independent action of her own for the death of her minor son and that it is not derivative and does not depend upon his conduct which resulted in his uninsurability.

*But see Zoda v. Mutual of Enumclaw Ins. Co.*, 38 Wn. App. 98, 684 P.2d 91 (1984).[3]

The Supreme Court addressed the issue of individual identity in *In re Marriage of Brown*, 100 Wn.2d 729, 675 P.2d 1207 (1984), where the court held damages recovered in a personal injury action for physical injury, pain and suffering are to be considered the separate property of the injured spouse. Thus, any rationale that the contributorially negligent spouse would receive unjust enrichment through the other spouse's consortium claim has been laid to rest.

Finally, the most recent case to expand the concept of individual identity is *Ueland v. Pengo Hydra–Pull Corp.*, 103 Wn.2d 131, 136, 691 P.2d 190 (1984), where the court granted children of an injured parent the right to sue for loss of consortium:

> When justice requires, this court does not hesitate to expand the common law and recognize a cause of action. In the present case, just as in *Lundgren,* to defer to the Legislature in this instance would be to abdicate our responsibility to reform the common law to meet the evolving standards of justice.

---

[3]However, *Zoda* can be distinguished as the court construed an insurance policy clause which provided uninsured motorist coverage for a covered person who sustained a *bodily injury*. The husband's claim for loss of consortium was denied because the injured wife had exhausted the policy's limits, and the court held the consortium loss did not fit within the definition of *bodily injury* contained in the policy.

Contra is *Bilodeau v. Lumbermens Mut. Cas. Co.* (and consolidated cause of Royal Insurance Company of America v. Stanley J. Jarzembowski), ___ Mass. ___, 467 N.E.2d 137 (1984), in which the court held an insurance company is obligated to make additional payments within the "per accident" limit for loss of consortium claims by the victim's spouse or children. The insurance company attempted to argue that "per person," as used in a standard policy, meant "per bodily injured person". The court disagreed, relying on the independent nature of the claim for a legally distinct injury.

A review of other jurisdictions shows a divergence of opinion on the issue of reducing consortium damages. *See* 21 A.L.R.3d 469–75 (Supp. 1984), and 25 A.L.R.4th 118–44 (1983). Those that hold contributory negligence of a spouse bars recovery for loss of consortium base their ruling on three different rationales—the derivative nature of the action, imputed negligence and assignee taking subject to defenses against assignor.[4] However, those jurisdictions which recognize the independent nature of loss of consortium hold the award is not affected by the injured spouse's negligence.

*Schwartz v. Milwaukee,* 54 Wis. 2d 286, 195 N.W.2d 480 (1972) construed the effect of a municipal statute limiting liability for damages in a tort action to $25,000. It held that the husband's claim for loss of consortium was a separate and distinct cause of action, and even though his wife settled her suit for $22,000 the husband's award of $8,000 was not affected by the policy limits. The court stated at page 293:

> In recognizing the individual right of the wife to be compensated for the loss of consortium, we pointed out in *Moran* [*v. Quality Aluminum Casting Co.,* 34 Wis. 2d 542, 150 N.W.2d 137 (1967)] it was her separate cause of action and not her husband's, which was on the other side of the coin. While the possibility a jury might grant double recovery was recognized in *Moran,* the concept of consortium was the foundation of separate rights in both husband and wife. Each can recover for his loss without there being a double recovery. This view emerged in *Fitzgerald v. Meissner & Hicks, Inc.* (1968), 38 Wis. 2d 571, 157 N. W. 2d 595, wherein we held a wife's claim of the damages for loss of consortium occasioned by her husband's injuries could be asserted in a separate action. We pointed out the wife's action was derivative only in the sense it arose out of or was occasioned by an injury to her husband. This is not the usual meaning of the word "derivative" and it might be more accurate to say a wife's damage was dependent upon the husband's injury and

---

[4]*See Runcorn v. Shearer Lumber Prods., Inc.,* 107 Idaho 389, 690 P.2d 324 (1984), and cases cited therein.

her cause of action must include the common factor of the accident and injury to her husband.

In *Lantis v. Condon,* 95 Cal. App. 3d 152, 157 Cal. Rptr. 22 (1979), the court reinstated the full amount of a loss of consortium award to the wife even though the husband was found to be 80 percent contributorially negligent. The court analyzed the problem at pages 157–58, as follows:

Loss of her husband's consortium impairs a wife's interests which are wholly separate and distinct from [those] of her husband: "'. . . the wife's loss is just as real as it is distinct. She can no longer enjoy *her* legally sanctioned and morally proper privilege of copulation or procreation, and is otherwise deprived of *her* full enjoyment of her marital state. These are *her* rights, not his.'" Thus, the injury incurred can neither be said to have been "parasitic" upon the husband's cause of action nor can it be properly characterized as an injury to the marital unit as a whole. Rather, it is comprised of Anne's own physical, psychological and emotional pain and anguish which results when her husband is negligently injured to the extent that he is no longer capable of providing the love, affection, companionship, comfort or sexual relations concomitant with a normal married life. From the vantage point of the negligent defendant, Anne is simply a foreseeable plaintiff to whom he owes a separate duty of care. If the injury she suffered were a broken leg while riding in a vehicle driven by her contributorily negligent husband, there would be no question but that his contributory negligence would not destroy or mitigate her right to full recovery. There is no reason why injury to her psychological and emotional state should be treated any differently than injury to her physical well being. The law protects equally her sex life and her leg.

(Citations omitted.) *See also Feltch v. General Rental Co.,* 383 Mass. 603, 421 N.E.2d 67 (1981); *Childers v. McGee,* 306 N.W.2d 778 (Iowa 1981).

██ Under the law in this state Mrs. Christie is an individual with separate legal rights which arise independent of her identity as a member of the Christie marital community. Yet there would be no injury to her consortium rights without the accompanying physical injury to her

spouse, and the existence of the marital relationship. In this respect, the loss of consortium action is very similar to the wrongful death action, which is specifically included in the 1981 amendment to RCW 4.22.020: "In an action brought for wrongful death, the contributory fault of the decedent shall be imputed to the claimant in that action." We note that the wife's right to loss of consortium action was established in 1980, but the Legislature failed in its 1981 amendment to include consortium with wrongful death actions as an exception to the imputation of negligence rule. While we may feel that it is basically unfair to allow Mrs. Christie 100 percent recovery from Mr. Maxwell where her husband was 62.5 percent contributorially negligent, we are constrained by our interpretation of RCW 4.22.020 and the rules of statutory construction from reducing her damages 62.5 percent. *See Automobile Drivers Local 882 v. Department of Retirement Sys.*, 92 Wn.2d 415, 421, 598 P.2d 379 (1979), *appeal dismissed, cert. denied*, 444 U.S. 1040 (1980), which affirms the rule: "[the] court cannot read into a statute that which it may believe the legislature has omitted, be it an intentional or inadvertent omission." *Jepson v. Department of Labor & Indus.*, 89 Wn.2d 394, 573 P.2d 10 (1977).

The judgment of the Superior Court is reversed; the case is remanded for reinstatement of the full damage award.

THOMPSON, J., and FARIS, J. Pro Tem., concur.

Reconsideration denied April 15, 1985.

Review denied by Supreme Court June 21, 1985.