(No. 69158.—

WILLIAM BLAGG *et al.*, Appellants, v. ILLINOIS F.W.D. TRUCK AND EQUIPMENT COMPANY *et al.* (The Village of Winthrop Harbor, Appellee).

*Opinion filed March 28, 1991.—Rehearing denied June 3, 1991.*

CALVO, J., dissenting.

DeSanto & Bonamarte, P.C., of Waukegan (Michael F. Bonamarte III and James J. DeSanto, of counsel), for appellants.

Heineke, Burke, Healy & Bodach, of Chicago (Mary Beth O'Brien, John C. Healy and Thomas D. Diver, of counsel), for appellee.

Kenneth J. Sophie, Jr., of the Law Offices of Gerard Facchini, and Bruce Robert Pfaff, of Corboy & Demetrio, P.C., all of Chicago (Pamela S. Menaker, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman and Barry L. Kroll, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE MORAN delivered the opinion of the court:

On February 7, 1984, William Blagg (William) brought suit for personal injuries in the circuit court of Lake County against defendants, F.W.D. Corporation (F.W.D.) and Seagrave Fire Apparatus, Inc. (Seagrave), manufacturers of a fire truck, and Illinois F.W.D. Truck and Equipment Company (Illinois F.W.D.), the manufacturer's distributor. At the same time, Marilyn Blagg (Marilyn), William's spouse, brought an action for loss of consortium.

The manufacturers then brought a third-party action for contribution against the Village of Winthrop Harbor (Village). Thereafter, the Village brought a fourth-party action for contribution against William, who had been awarded $426.44 per week for life in workers' compensation benefits. On March 14, 1988, the Village filed a petition asserting a workers' compensation lien pursuant to section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)) for $282,251.18, which increased by $426.44 each week.

Trial was set for Monday, September 19, 1988. However, on Friday, September 16, 1988, William and Marilyn agreed to settlements with F.W.D., Seagrave, and Illinois F.W.D. William was to receive $100,000 for his injuries and Marilyn was to receive $350,000 as compensation for her loss of consortium. The Village objected to the apportionment of the settlements, arguing that they allowed the parties to circumvent its workers' compensation lien. After the circuit court held a hearing, it upheld the settlements, determining that they were

made in good faith. As a result of the settlements, the Village was able to collect only $71,698.48 of its lien.

The Village appealed the trial court's order approving the settlements, and the appellate court reversed and remanded for a new hearing (186 Ill. App. 3d 955). William and Marilyn petitioned this court for leave to appeal (107 Ill. 2d R. 315(a)), which was granted. *Amicus curiae* briefs from the Illinois Trial Lawyers Association and the Illinois Association of Defense Trial Counsel were also filed.

William and Marilyn raise three issues on appeal: (1) whether the appellate court erred in reversing the trial court's approval of the settlement agreements; (2) whether the comparative negligence of an injured spouse reduces the damages recoverable for loss of consortium; and (3) whether an employer is entitled to subrogation under the Workers' Compensation Act.

The relevant facts are derived from allegations in the complaint as follows: that William was a volunteer fireman for the Village; that on October 3, 1982, while en route in response to a fire call within the Village, William was forcibly ejected, or thrown, from the cab area of a fire truck known as the rear cab jumpseat area; and that William sustained serious physical injuries due to his fall.

The first issue that William and Marilyn raise is the propriety of the trial court's approval of their settlements. Section 5(b) of the Workers' Compensation Act provides, in part:

> "(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under

this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

\* \* \*

If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party.

In such actions brought by the employee or his personal representative, he shall forthwith notify his employer by personal service or registered mail, of such fact and of the name of the court in which the suit is brought, filing proof thereof in the action. The employer may, at any time thereafter join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection. No release or settlement of claim for damages by reason of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee or his personal representative, except in the case of the employers, such consent is not required where the employer has been fully indemnified or protected by Court order." Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).

In reviewing the settlements in the instant case, the trial court relied on *Page v. Hibbard* (1987), 119 Ill. 2d 41, 50, which held that an employer is not entitled to reimbursement from an injured employee's spouse's recovery for loss of consortium and that an action for loss of consortium is not a derivative claim, "but is an indepen-

dent action to recover for injuries the spouse has suffered." (*Page*, 119 Ill. 2d at 48.) The court in *Page* remanded the cause to the trial court to determine if the value of the loss-of-consortium award, which was equal to the value of the employee's personal injuries, was proper in light of the total settlement. (*Page*, 119 Ill. 2d at 50.) Also, the trial court noted that the standard set forth in *Dearing v. Perry* (Ind. App. 1986), 499 N.E.2d 268, 272, which held that a claim for loss of consortium will be given legal effect only when fully and fairly determined by an impartial trier of fact, or where the insurance carrier is invited to participate in the settlement negotiations, is instructive.

*Page* did not set forth clear guidelines for trial courts to use in determining whether an allocation of settlement proceeds is fair and reasonable. However, it was noted that the holding was in accord with *Rascop v. Nationwide Carriers* (Minn. 1979), 281 N.W.2d 170, 173, where the court found that a $30,000 allocation for loss of consortium, in light of the $100,000 total award to the employee and his wife, was reasonable. Additionally, in *DeMeulenaere v. Transport Insurance Co.* (Wis. App. 1983), 116 Wis. 2d 322, 342 N.W.2d 56, the court cited *Rascop* and stated that a trial court should "closely scrutinize settlements *** which appear to circumvent the effects of the [statutory] distribution formula." *DeMeulenaere*, 116 Wis. 2d at 327, 342 N.W.2d at 60.

In approving the settlements in the instant case, the trial court relied heavily on the Contribution Act requirement that a settlement by a joint tortfeasor be made in good faith (Ill. Rev. Stat. 1987, ch. 70, par. 302(c)). In full, section 2(c) of the Contribution Act provides:

> "(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the

other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Ill. Rev. Stat. 1987, ch. 70, par. 302(c).)

In interpreting section 2(c), this court has stated:

"As a matter of public policy the settlement of claims should be encouraged. If we were now to add limitations not expressed in the general language of the settlement instrument or in the provisions of the Contribution Act, we would make those who desire to end litigation wary and uncertain of what they would accomplish by settlement." (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 325.)

Furthermore, this court has held that the entire circumstances of the settlement need to be examined in determining whether or not the settlement was entered into in good faith. *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 122-23.

In the case at bar the trial court focused almost exclusively on section 2(c) and its requirement of good faith. The trial court virtually ignored section 5(b) of the Workers' Compensation Act. In regards to section 5(b), this court has stated:

"The plain meaning of section 5(b) imposes the duty of protecting the employer's lien upon the court. The statute provides that the very point of the employer's intervention in the third-party legal proceedings is 'so that all orders of *court* after hearing and judgment shall be made for his protection.' (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(b).) In addition, where a settlement between the employee and the third party is reached, the statute requires either the employer's consent or an order of the court protecting him. *There can be little question that what is protected is the employer's right to be reimbursed for the 'amount of compensation paid or to be paid by him to such employee ***.' "* (Em-

phasis added.) *Freer v. Hysan Corp.* (1985), 108 Ill. 2d 421, 426.

It is of utmost importance that the trial court protect an employer's lien. When a settlement agreement allocates an award between an employee's claim for personal injuries and a spouse's claim for loss of consortium, the trial court must closely scrutinize the agreement so that an employer's rights are not abused. *DeMeulenaere*, 116 Wis. 2d at 327, 342 N.W.2d at 60.

In this case, the appellate court found that the settlement agreements did "not fairly and reasonably allocate the award between William for his injuries and Marilyn for her loss of consortium." (186 Ill. App. 3d at 963.) The court further noted that the settlements represented an obvious attempt to circumvent the Village's workers' compensation lien, as no part of Marilyn's loss-of-consortium award can be used to reimburse the lien. 186 Ill. App. 3d at 963.

The only evidence in the record pertaining to Marilyn's loss of consortium comes from her interrogatory answers. The evidence includes expenses for the many auto and household repairs that, previous to his injury, would have been performed by William (now performed by hired help). Additionally, Marilyn lists her added expenses for food, travel, and lodging necessitated by William's trips to the hospital. This court has stated that consortium "includes, in addition to material services, elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity." (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 427.) However, placing the value of Marilyn's conceptual needs (added to the aforementioned expenses) at more than three times the value of William's permanent injuries does not appear to be in good faith. The value indicates that the settlements may have been reached in a manner to avoid the Village's lien.

The second issue raised is whether Marilyn's award for loss of consortium should be reduced by the comparative fault of William in causing his own injuries.

This issue is a matter of first impression, as this court has not previously decided what effect the adoption of comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1) should have on a loss-of-consortium claim. Prior to the decision in *Alvis*, Illinois law recognized that a claim for loss of consortium was essentially a dependent right of recovery, predicated on the claim of the directly injured spouse. *Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 748.

In *Rollins v. General American Transportation Corp.* (1964), 46 Ill. App. 2d 266, the court directly considered the effect of contributory fault of the physically injured spouse on a loss-of-consortium claim. There the court first found that the physically injured spouse was contributorily negligent, and thus held that the dismissal of the personal injury action was proper. (*Rollins*, 46 Ill. App. 2d at 274-75.) The court then went on to hold that since a loss-of-consortium claim was directly based on the injured spouse's action, the contributory fault of the injured spouse must necessarily bar the dependent consortium claim. *Rollins*, 46 Ill. App. 2d at 275; see also *Kolar v. City of Chicago* (1973), 12 Ill. App. 3d 887.

The aforementioned cases, of course, were decided prior to *Alvis* and thus were based on contributory negligence principles. Today, the absolute bar to recovery for loss of consortium that formerly existed must be reviewed under comparative negligence principles. However, the *Alvis* decision did nothing to change the essential nature of a loss-of-consortium claim.

William, Marilyn, and *amicus* Illinois Trial Lawyers Association argue that a loss-of-consortium action is an essentially "independent" (and not "derivative") action, and thus comparative negligence principles do not apply.

However, as a recent appellate court case has noted, a consortium claim is both "independent" and "derivative." (*Erickson v. Muskin Corp.* (1989), 180 Ill. App. 3d 117, 131.) The *Erickson* court found that three recent, post-*Alvis* cases (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195; *Brown v. Metzger* (1984), 104 Ill. 2d 30; *Page v. Hibbard* (1987), 119 Ill. 2d 41) support a finding that negligence attributed to the physically injured spouse would not be imputed to a loss-of-consortium claim.

The *Erickson* case was misguided, as not one of this court's earlier cases directly answers the question of whether a loss-of-consortium claim is "independent" or "derivative" for comparative negligence purposes.

In *Hammond v. North American Asbestos Corp.*, the court held that a wife's loss-of-consortium action was not barred by the two-year statute of limitations applicable to her husband's personal injury action. (*Hammond*, 97 Ill. 2d at 208-09 (loss-of-consortium claims and the direct-injury claims on which they are predicated are now governed by the same limitations period (see Ill. Rev. Stat. 1987, ch. 110, par. 13—203); however, the new statute has no effect on the outcome of the instant case, as the underlying action was filed in 1984).) Thus, for statute of limitations purposes, the loss-of-consortium action was not derivative. In *Brown v. Metzger*, this court held that a loss-of-consortium action, whenever possible, should be joined with the injured spouse's action for personal injuries, thus avoiding potentials for "double recovery." (*Brown*, 104 Ill. 2d at 35.) The court also stated, in discussing *Hammond v. North American Asbestos Corp.*, that "[t]he clear implication of that holding is, of course, that the right of the deprived spouse to recover does not depend on whether the impaired spouse's cause of action is still viable." (*Brown*, 104 Ill. 2d at 38.) Thus, an in-

jured husband's settlement release for his personal injuries does not bar his wife's loss-of-consortium claim.

Finally, the *Erickson* court relied on the decision in *Page v. Hibbard,* where the court decided that a defendant employer could not enforce a workers' compensation lien against settlement proceeds received by the injured employee's spouse for loss of consortium. (*Erickson,* 180 Ill. App. 3d at 130.) In *Page v. Hibbard* the court stated that a consortium action "is not a derivative claim brought by the spouse as the personal representative of the employee, but is an independent action to recover for injuries the spouse has suffered." *Page,* 119 Ill. 2d at 48.

In determining whether or not damages for loss of consortium are subject to the comparative negligence of the physically injured spouse, it is useful to look at decisions of other comparative negligence jurisdictions. A small number of jurisdictions follow the view that a loss-of-consortium claim is completely independent of the related personal injury claim, and thus the damages awarded will not be affected by the contributory fault of the physically injured spouse. (See, *e.g., Macon v. Seaward Construction Co.* (1st Cir. 1977), 555 F.2d 1 (interpreting New Hampshire law); *Christie v. Maxwell* (1985), 40 Wash. App. 40, 696 P.2d 1256; *Brann v. Exeter Clinic, Inc.* (1985), 127 N.H. 155, 498 A.2d 334; *Feltch v. General Rental Co.* (1981), 383 Mass. 603, 421 N.E.2d 67; *Lantis v. Condon* (1979), 95 Cal. App. 3d 152, 157 Cal. Rptr. 22.) Other jurisdictions, the clear majority, hold that a loss-of-consortium award must be reduced by the comparative negligence of the physically injured spouse. See, *e.g., Turnbow v. Wasden* (D. Nev. 1985), 608 F. Supp. 237 (interpreting Nevada law); *Eggert v. Working* (Alaska 1979), 599 P.2d 1389; *Quadrone v. Pasco Petroleum Co.* (1988), 156 Ariz. 415, 752 P.2d 504; *Nelson v. Busby* (1969), 246 Ark. 247, 437 S.W.2d 799;

*Lee v. Colorado Department of Health* (Colo. 1986), 718 P.2d 221; *Hamm v. City of Milton* (Fla. App. 1978), 358 So. 2d 121; *Mist v. Westin Hotels, Inc.* (1987), 69 Haw. 192, 738 P.2d 85; *Runcorn v. Shearer Lumber Products, Inc.* (1984), 107 Idaho 389, 690 P.2d 324; *McGuire v. Sifers* (1984), 235 Kan. 368, 681 P.2d 1025 (statutory interpretation); *Thill v. Modern Erecting Co.* (1969), 284 Minn. 508, 170 N.W. 2d 865; *Tichenor v. Santillo* (1987), 218 N.J. Super. 165, 527 A.2d 78; *Maidman v. Stagg* (1981), 82 A.D.2d 299, 441 N.Y.S.2d 711; *Scattaregia v. Shin Shen Wu* (1985), 343 Pa. Super. 452, 495 A.2d 552; *White v. Lunder* (1975), 66 Wis. 2d 563, 225 N.W. 2d 442; *Weaver v. Mitchell* (Wyo. 1986), 715 P.2d 1361.

Much of the criticism of the "derivative" liability principle came about prior to the adoption of the comparative negligence doctrine by most jurisdictions. (Compare W. Prosser, Law of Torts §125, at 893 (4th ed. 1971) (harsh criticism of the doctrine), with W. Keeton, Prosser & Keeton on Torts §125, at 938-39 (5th ed. 1984) (significantly retracted criticism).) The basic premise of the jurisdictions that recognize loss of consortium as an independent action is that the loss-of-consortium claimant has an essentially different cause of action that is wholly separate and distinct from the physically injured spouse's. *Lantis v. Condon* (1979), 95 Cal. App. 3d 152, 157, 157 Cal. Rptr. 22, 24.

This court follows the view of the majority of the jurisdictions, which holds that, for the purposes of comparative negligence, a loss-of-consortium claim is derivative. The first reason for this holding is because it is the natural extension of the earlier Illinois precedents for loss-of-consortium claims. As noted earlier, prior to *Alvis v. Ribar* (1981), 85 Ill. 2d 1, contributory negligence on the part of the physically injured spouse completely barred recovery for loss of consortium. (See *Rollins v. General American Transportation Corp.* (1964), 46 Ill.

App. 2d 266; *Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740.) The *Alvis* decision, and the advent of comparative negligence principles, has substantially reduced the harsh effects of contributory negligence by the physically injured spouse, as the loss-of-consortium plaintiff is no longer barred from recovery.

The second reason for this court's adopting the derivative test is that it is the "simplest and most efficient way to reach a just result." (*Lee v. Colorado Department of Health* (Colo. 1986), 718 P.2d 221, 232.) As one court has stated:

> "The fact that each spouse is equal and independent and suffers a personal loss when the other is injured, does not alter the fact that the basis for recovery for loss of consortium is 'interference with the continuance of a healthy and happy marital life' and 'injury to the conjugal relation.' [Citation.] *** The loss resulting from an accident is best distributed among those whose negligence caused it in proportion to the fault of each of them." *Eggert v. Working* (Alaska 1979), 599 P.2d 1389, 1391.

Finally, an injured spouse "who negligently contributes to his or her incapacitating injury, in turn, harms not only the marital interest of the other spouse, but also affects the unity of the familial entity which is in fact an 'economic unit.'" (*Mist v. Westin Hotels, Inc.* (1987), 69 Haw. 192, 199, 738 P.2d 85, 91.) As the Colorado Supreme Court noted:

> "If a claim for loss of consortium were viewed as totally independent of the other spouse's personal injury claim, there would be no reason to preclude one spouse from suing another for loss of consortium or to prohibit the primary tortfeasor sued in a consortium claim from impleading the spouse who suffered the personal injuries. [Citations.] Placing one spouse in an adversarial relationship to the other over the latter's claim for loss of consortium introduces an element of legal conflict into the marriage that, far from contributing to marital harmony,

will most likely have the effect of fostering discord between the parties. The derivative approach avoids much of this potential for conflict, since the recovery on a consortium claim is dependent solely on the determination of the relative degrees of negligence of the defendant and the spouse who sued for the personal injuries." *Lee v. Colorado Department of Health* (Colo. 1986), 718 P.2d 221, 232.

This court holds that a recovery for loss of consortium is limited by the physically injured spouse's negligence. It is thus necessary to remand this cause to the trial court because the possible comparative negligence of William was not examined in the court's approval of the settlements. Furthermore, to the extent that it is inconsistent with this opinion, *Erickson v. Muskin Corp.* (1989), 180 Ill. App. 3d 117, is overruled.

William and Marilyn, as cross-appellants before the appellate court, brought the issue of employer subrogation rights, an issue not raised in the circuit court. The appellate court considered that the issue would likely be raised again on remand and proceeded to decide the issue. The Village informs this court that its motion to dismiss the issue was denied by the appellate court. The Village moves this court to dismiss this issue. This court allows the Village's motion to dismiss that part of the appeal.

For the foregoing reasons, this court affirms the judgment of the appellate court.

*Appellate court affirmed.*

JUSTICE CALVO, dissenting:

Because I conclude that, in Illinois, a loss-of-consortium claim is a separate and independent claim belonging solely to the deprived spouse and is not subject to the defenses available to a defendant against a claim of the injured spouse, I dissent.

Loss of consortium is "based not on an injury to the [deprived spouse's] person but on an injury to a personal relationship established by the marriage contract." (*Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 162.) "[A]lthough actions for personal injuries and actions for loss of consortium may derive from the same operative facts, they are legally distinct." *Mitchell*, 58 Ill. 2d at 163.

Whether the comparative negligence of an injured spouse is or is not imputable to a deprived spouse's loss-of-consortium claim is one of first impression in this State. The majority is correct in noting that the opinions of this court in *Brown v. Metzger* (1984), 104 Ill. 2d 30, *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, and *Page v. Hibbard* (1987), 119 Ill. 2d 41, did not directly answer the question whether a loss-of-consortium claim must be reduced by the amount of comparative negligence on the part of an injured spouse. I agree with the appellate court in *Erickson v. Muskin Corp.* (1989), 180 Ill. App. 3d 117, however, that these cases are "indicative of a shift away from the pre-*Alvis* [*Alvis v. Ribar* (1981), 85 Ill. 2d 1] concepts that all contributory negligence of an injured spouse was imputed to the spouse claiming loss of consortium." (*Erickson*, 180 Ill. App. 3d at 130.) I agree.

In *Brown*, this court held the release in settlement by an injured spouse in a personal injury action would not operate as a defense to the deprived spouse's independent cause of action for loss of consortium. In *Brown*, this court noted:

> "Several appellate court opinions have emphasized that the action for loss of consortium was a derivative one (*Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 162) and could be maintained only if the facts entitled the [injured] spouse to recovery (*Plocar v. Dunkin' Donuts of America* (1981), 103 Ill. App. 3d 740, 748-49; *Knox v.*

*North American Car Corp.* (1980), 80 Ill. App. 3d 683, 690, 693-94; *Rollins v. General American Transportation Corp.* (1964), 46 Ill. App. 2d 266, 275)." (*Brown*, 104 Ill. 2d at 38.)

In *Plocar, Knox* and *Rollins,* the deprived spouse was denied recovery for loss of consortium where the facts were such that the injured spouse was not permitted to proceed with a cause of action.

This court, in *Brown,* then went on to state:

"More recently, however, this court has spoken to the contrary in *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 208-09, holding that a deprived spouse could maintain a loss-of-consortium suit even though the [injured] spouse's action was barred by the limitations statute. The clear implication of that holding is, of course, that the right of the deprived spouse to recover does not depend on whether the [injured] spouse's cause of action is still viable." *Brown,* 104 Ill. 2d at 38.

In *Hammond,* the injured spouse's personal injury claim was barred by the two-year statute of limitations when the deprived spouse filed her loss-of-consortium claim. In allowing the loss-of-consortium claim, this court rejected the defendant's argument that the loss-of-consortium claim was derivative of the injured spouse's personal injury claim and should therefore be barred by the statute of limitations which served as a defense to the injured spouse's cause of action. The holding in *Hammond,* then, was directly at odds with the pre-*Alvis* concept that a loss-of-consortium claim was derivative of, and therefore subject to all defenses available against, the injured spouse's cause of action.

In *Page,* this court held that an employer's workers' compensation lien would not attach to a settlement received by a deprived spouse for a loss-of-consortium claim. This court stated:

"[A]n action for loss of consortium is not a derivative claim brought by the spouse as the personal representa-

tive of the employee, but is an independent action to recover for injuries the spouse has suffered, such as loss of support and loss of society. (See *Brown v. Metzger* (1984), 104 Ill. 2d 30, 38; *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 208-09.)" *Page*, 119 Ill. 2d at 48.

The fact that a majority of other jurisdictions have chosen to impute the negligence of the injured spouse to the deprived spouse's loss-of-consortium claim does not, in and of itself, prove the wisdom of that choice. Neither does it change the fact that, in Illinois, a loss-of-consortium claim is an "independent action to recover for injuries the spouse has suffered" (*Page*, 119 Ill. 2d at 48).

Jurisdictions which reduce a consortium award by the comparative negligence of the injured spouse characterize the consortium claim as derivative and subject to any defense which the defendant would be able to assert against the injured spouse. The rationale for this conclusion is that, because the consortium claim is derivative, a deprived spouse "can have no better standing in court than is vested in [the injured spouse]." *Nelson v. Busby* (App. 1969), 246 Ark. 247, ___, 437 S.W.2d 799, 803.

Jurisdictions which do not reduce a consortium award by the comparative negligence of the injured spouse characterize the consortium claim as independent from, and not derivative of, the claim brought by the injured spouse. The jurisdictions so holding reach this conclusion by "examin[ing] the nature of the claims, not the source of the injuries." (*Feltch v. General Rental Co.* (1981), 383 Mass. 603, ___, 421 N.E.2d 67, 71.) This is because "although [the deprived spouse's] claim for loss of consortium [is] based on the same set of facts as the [injured spouse's] action for personal injuries, each spouse 'is enforcing an independent right.' " *Feltch*, 383 Mass. at ___, 421 N.E.2d at 71, quoting *Duffee v. Boston Ele-*

*vated Ry. Co.* (1906), 191 Mass. 563, 564, 77 N.E. 1036, 1037.

Our General Assembly has determined that "any damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1116.) To reduce a consortium award by the degree of comparative negligence attributable to the injured spouse would be to impute the negligence of one party to another. "It is fundamental in the law of imputed negligence that to impute the negligence of one person to another, such persons must stand in a relation of privity and there is no such thing as imputable negligence except in those cases where such a privity as master and servant or principal and agent exists." *Palmer v. Miller* (1942), 380 Ill. 256, 259-60.

I would hold that the comparative negligence of an injured spouse may not be imputed to a deprived spouse in a loss-of-consortium claim; therefore, a loss-of-consortium claim may not be reduced by the comparative negligence of the injured spouse.

I do not agree with the majority that its holding is "the natural extension of the earlier Illinois precedent for loss-of-consortium claims." In my opinion, under *Brown, Hammond* and *Page*, a loss-of-consortium claim is a separate and independent cause of action which is personal to the deprived spouse and is not subject to the defenses available to the defendant against the injured spouse. I do not agree with the majority that treating a loss-of-consortium claim as derivative is the "simplest and most efficient way to reach a just result." A plaintiff's damages are to be "reduced by the percentage of fault attributable to [the plaintiff]." (*Alvis*, 85 Ill. 2d at 25; see Ill. Rev. Stat. 1987, ch. 110, par. 2—1116.) In my opinion, it is not just to a deprived spouse, who is not at fault, to reduce a consortium award by the amount of fault attributable to any other person.

The majority identifies a conflict between the requirements of the Contribution Act that a settlement by a joint tortfeasor be made in good faith (Ill. Rev. Stat. 1987, ch. 70, par. 302(c)), and section 5(b) of the Workers' Compensation Act. ("No *** settlement *** shall be valid without the written consent of both employer and employee or his personal representative, except in the case of the employers, such consent is not required where the employer has been fully indemnified or protected by Court order" (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)).) The majority resolves this conflict by concluding that "[i]t is of utmost importance that the trial court protect an employer's lien." The majority relies on *Freer v. Hysan Corp.* (1985), 108 Ill. 2d 421, in reaching this conclusion.

The majority either overlooks or ignores a simple but important distinction between *Freer* and the case at bar. In *Freer*, there was no action in contribution by the defendants against the employer. The only interest of the employer in *Freer* which was in need of protection by the court pursuant to section 5(b) was the employer's workers' compensation lien. *Freer* did not contemplate a situation where an employer was potentially subject to liability to a defendant in contribution. *Freer* contemplated a situation where the only protectable interest on the part of the employer was its workers' compensation lien—there simply was no other interest to protect.

In determining whether to approve a settlement in a case where an employer has a workers' compensation lien and where an action in contribution against the employer exists, the circuit court, in the exercise of its discretion, must consider whether the settlement is in good faith and whether the settlement serves to protect the employer pursuant to section 5(b). An order of the circuit court protecting the employer pursuant to section 5(b) in such a case is more than simply protecting the

employer's workers' compensation lien. The potential liability on the part of an employer to a defendant in an action for contribution must also be considered. If it were otherwise, one interest of the employer, that of avoiding potential liability in contribution, would be sacrificed for another interest of the employer, that of recouping any benefits paid to the injured employee. In the instant case, the circuit court had to consider not only the interest of the Village in recouping its workers' compensation lien, but also the interest of the Village in avoiding potential liability in the contribution action brought against the Village by defendants.

The majority can see no valid reason for Marilyn's loss-of-consortium award to be more than three times the value of William's injury claim and concludes that the settlements do "not appear to be in good faith. The value indicates that the settlements may have been reached in a manner to avoid the Village's lien."

In my opinion, the circuit court correctly rejected the Village's argument that William's comparative negligence must be imputed to Marilyn's loss-of-consortium award. The circuit court did not abuse its discretion when it accepted plaintiffs' argument that the smaller amount of recovery to be received by William pursuant to the settlements was justified in part because, had the case gone to trial, William's award could have been substantially reduced due to his comparative negligence.

The circuit court rejected the Village's argument that the instant case was analogous to *Dearing v. Perry* (Ind. App. 1986), 499 N.E.2d 268, where the plaintiffs, an injured spouse and a deprived spouse, and a third-party defendant "negotiated [a] settlement behind [the employer's workers' compensation carrier's] back" for the full amount of the third-party defendant's insurance policy. (*Dearing*, 499 N.E.2d at 272.) In *Dearing*, the workers' compensation carrier was unaware of negotiations be-

tween the plaintiffs and the third-party defendant and was first notified of the settlement when the settlement was paid into court. In the case at bar, the circuit court found *Dearing* distinguishable. According to the circuit court, the plaintiffs in *Dearing* "tried to pull a fast one."

In the instant case, it is a matter of record that defendants had a contribution action against the Village and the Village had a fourth-party complaint against William. It was the Village's position that William was responsible for his own injuries and if any judgment were entered against the Village in favor of defendants, the Village expected contribution from William.

The Village was given the opportunity to question Marilyn concerning the value of her loss-of-consortium claim. The Village, however, waived its right to examine Marilyn. The Village failed to present any evidence to challenge the settlements. No evidence was presented that Marilyn's loss-of-consortium claim was not worth what was being proposed by defendants. No evidence was presented concerning the degree of William's comparative negligence. No evidence was presented that the two settlements were being divided in a collusive manner so as to circumvent the Village's lien. The circuit court specifically found that there was no collusion present in the instant case as compared with *Dearing*, and found the proposed settlements in good faith.

The circuit court considered the fact that, pursuant to the settlements, defendants would not pursue the contribution action against the Village. The Village has resolutely refused to acknowledge that the settlements protect it from potential liability to defendants in contribution. The circuit court, however, was not required to ignore that a significant interest of the Village would be protected by the settlements.

In determining whether a proposed settlement both is in good faith and serves to protect an employer, "the en-

tire circumstances surrounding a settlement must be taken into account." (*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 122.) *Page* requires that a loss-of-consortium award be "fair and reasonable in light of the total settlement." (*Page*, 119 Ill. 2d at 50.) This determination must be made "by an independent, impartial trier of fact." (*Page*, 119 Ill. 2d at 50.) In my opinion, the circuit court satisfied the requirements of *Page*.

In the instant case, the circuit court held a hearing in which arguments of counsel were heard and an opportunity to challenge the good-faith nature of the settlements was expressly waived by the Village. The circuit court did not "simply ratif[y] the allocation of the settlement[s]." *Page*, 119 Ill. 2d at 50.

The circuit court considered the totality of the circumstances, specifically found no collusion, and concluded the settlements to be in good faith. It was noted by the circuit court that, had William not brought suit against defendants, the Village would not have had the opportunity of recouping any of the benefits paid to William. Further, as a result of the settlements, the Village was protected against potential liability to defendants in contribution. The circuit court properly considered both the interest of the Village as lien holder and the interest of the Village as a third-party defendant in the contribution action. The circuit court properly allowed the Village an opportunity to present evidence to show that the settlements were not in good faith or to show that the Village was not being protected by the circuit court. Under these circumstances, I would hold that the circuit court did not abuse its discretion in approving the two settlements, and would therefore reverse the appellate court.