SANDRA DOELLMAN, Adm'r of the Estate of Christopher Doellman, Deceased, Plaintiff, v. WARNER & SWASEY COMPANY *et al.*, Defendants (Warner & Swasey Company, Third-Party Plaintiff-Appellant; De-Sta-Co *et al.*, Third-Party Plaintiffs; Electric Wheel Company, Third-Party Defendant-Appellee).

First District (2nd Division)   No. 85—2657

Opinion filed September 23, 1986.

Lord, Bissell & Brook, of Chicago (C. Roy Peterson, Hugh C. Griffin, and Mary E. Bennett, of counsel), for appellant.

Ross & Hardies, of Chicago (William D. Serritella and Eric S. Palles, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:
This is an appeal from the dismissal of appellant Warner & Swa-

sey Company's third-party complaint for contribution filed against Electric Wheel Company, appellee herein. Appellee had earlier settled with another third-party claimant who sought contribution from appellee regarding the same accident. The circuit court ultimately found that appellee's settlement of that related contribution complaint was made in good faith, and that appellee was therefore absolved of all further liability for contribution under the terms of the Contribution Among Joint Tortfeasors Act (hereinafter the Act) (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*). Warner & Swasey appeals from that decision by the circuit court. We affirm.

The instant litigation arose from the death of Christopher Doellman, who was killed as he was operating a lathe for his employer, appellee Electric Wheel Company. The lathe was a "turret" lathe, manufactured by appellant, and was equipped with a holding fixture fabricated by appellee. That fixture had in turn been incorporated into a clamp manufactured by De-Sta-Co, and distributed by L. R. Christiansen Company (codefendants along with appellant in plaintiff Sandra Doellman's original wrongful-death action. These codefendants are collectively referred to herein as DSC). The lathe and attachments were used to hold rotating bent spindles in place while Christopher polished them with emery cloth. At the time of the accident, Christopher had an 8-foot length of cloth wrapped around his wrist and hand. When the cloth became entangled with the lathe, Christopher was pulled into the lathe and fatally injured. There were no witnesses to the accident.

Sandra Doellman filed a wrongful-death suit against appellant in her capacity as administrator of Christopher's estate, asserting that appellant was negligent in the design and manufacture of the lathe, and that appellant also had failed to provide adequate instructions and warnings regarding the use of the lathe. Sandra raised similar allegations against DSC regarding the design, manufacture, instructions and warnings about the clamp.

Appellant and DSC each impleaded appellee into the case through third-party complaints, both seeking contribution from appellee in the event that any damages ultimately were awarded to Christopher's estate. Sandra also filed a workers' compensation claim against appellee, which resulted in an award valued at over $250,000. As of January 1, 1985, appellee had paid plaintiff $56,925.23 in workers' compensation benefits; any recovery plaintiff received as a result of the lawsuit was subject to appellee's statutory workers' compensation lien, in the amount of the benefits paid.

Settlement negotiations among all the parties ensued, including

the parties to this appeal, during which plaintiff's attorney indicated that plaintiff would settle the entire case for $250,000 plus a waiver of the workers' compensation lien. Appellee offered to contribute $140,000 to codefendants/third-party plaintiffs (appellant and DSC), and to release its workers' compensation lien, and DSC offered $5,000 towards the settlement. This left a balance of $105,000 for appellant to satisfy, but appellant balked at the proposed agreement, refusing to offer more than $25,000 towards settling the case.

Appellant did suggest that plaintiff be offered a total of $170,000 plus a waiver of the workers' compensation lien, an amount equal to the settlement appellant had rejected (with appellant's liability reduced from $105,000 to $25,000). Plaintiff rejected this offer, but did agree to settle the case as to all the parties except appellant in accordance with the previous proposal.

On December 7, 1984, appellee offered $140,000 in contribution towards a settlement of the third-party claims against it, and to waive its statutory workers' compensation lien. DSC accepted appellee's offer, and agreed to settle with plaintiff for $145,000. Plaintiff's offer to settle with appellant for $75,000 was rejected by appellant. Appellee, plaintiff and DSC ultimately settled the case on the above-indicated terms, exchanging appropriate releases from liability and leaving only appellant as defendant in the action. This status was formalized on January 16, 1985, when the circuit court approved the settlement and dismissed all parties pursuant to this agreement, reserving only the case as to appellant.

On January 31, 1985, appellant moved to vacate the order, and appellee moved for dismissal of appellant's third-party complaint for contribution as per the Act. (Ill. Rev. Stat. 1985, ch. 70, par. 302.) The issues raised by those motions were briefed to the circuit court, which on April 23, 1985, ruled that the settlement did not discharge appellee from liability for contribution to appellant, as appellee was an employer (therefore outside the ambit of the discharge provisions of the Act), and because the court found that the settlement was not entered into in good faith.

Both appellee and plaintiff filed motions to reconsider that decision, and a hearing was held on those motions on June 5, 1985. The circuit court confessed error at that time and vacated its April 23, 1985, order. After hearing further argument on August 6, 1985, the court ruled that the settlement between DSC and appellee was made in good faith, and that the discharge provisions of the Act were therefore applicable. Accordingly, the circuit court granted appellee's motion to dismiss appellant's contribution claim against it.

Appellant thereafter entered into its own settlement negotiations with plaintiff, resulting in an agreement to pay plaintiff $58,333.34 to terminate its part of the litigation. After reaching that agreement, appellant perfected this appeal in order to contest the court's decision to dismiss the contribution complaint.

Appellant's challenge to the circuit court's decision is twofold. Initially, appellant asserts that appellee did not establish the nexus necessary to fall within the ambit of the Act's discharge provisions. Alternatively, appellant contends that appellee's settlement was, in fact, a ruse designed to evade its liability on appellant's contribution complaint; this deceit allegedly robbed that settlement of the good faith required for discharge under the Act. Neither of these assertions survives scrutiny.

Both issues revolve around the language of the Act itself. The relevant portions of the Act provide:

"Sec. 302. Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort *arising out of the same injury* to person or property, or the same wrongful death, there is a right of contribution among them, even though the judgment has not been entered against any or all of them.

\* \* \*

(c) When a release or covenant not to sue or not to enforce judgment is *given in good faith* to one or more persons liable in tort *arising out of the same injury* or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 70, par. 302.)

We cannot accept appellant's construction of the provisions given emphasis above, or the conclusions appellant draws from that interpretation.

■ Appellant's first assignment of error depends on the construction to be given to the phrase "arising out of the same injury." Appellant posits that this clause is a reference, not to the injury sustained by the original plaintiff, but rather to the injuries incurred by the par-

ties seeking contribution. Unless the parties are seeking contribution based on an injury common to both of them, appellant claims that settlement of one contribution claim cannot extinguish the remaining claims, as they are outside the ambit of the discharge provisions of the Act. Ill. Rev. Stat. 1985, ch. 70, pars. 302(c), (d).

In the context of the instant case, appellant's argument may be summarized as follows: its contribution complaint did not arise out of the "same injury" as DSC's claim, because the former was grounded upon potential liability for Christopher's death based on the lathe, whereas the latter was predicated on potential liability based on the lathe clamp. Since these "injuries" were founded upon different theories of recovery, appellee's settlement of one had no bearing on the other. Under this restrictive perspective of the statute, the injuries would indeed be distinct, despite the fact that they arose from a single incident: Christopher Doellman's death. Appellant has offered no authority to substantiate this novel interpretation of the Act, and our research shows that there is no support to be found in prior decisions under the Act. To the contrary, those cases decided under the Act belie appellant's rather strained construction.

The Act seeks both to apportion liability for tortious conduct among those liable for the resultant injuries, and to encourage settlement of such cases. (*Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 94, 463 N.E.2d 792.) In making that apportionment, the Illinois Supreme Court has noted:

> "A claimant seeking [contribution] need only show a common injury which his acts and those of the contributor combined to bring about and which makes them subject to liability in tort." (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349, 459 N.E.2d 935.)

The injury referenced in the above passage is clearly that incurred by plaintiff. In the case at bar, Christopher was killed while working at the lathe, and his estate sued both DSC and appellant as manufacturers of the machinery which killed him. This was the "same injury" which the Act requires for contribution to lie, and which predicated the contribution complaints herein. Indeed, it has been held in reference to the clause at issue herein that:

> " 'liability' is determined at the time of the injury out of which the right to contribution arises, and not at the time the action for contribution is brought." (*Stephens v. McBride* (1983), 97 Ill. 2d 515, 520, 455 N.E.2d 54.)

(See also *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 11, 461 N.E.2d 382.) If the liability in tort must be determined at that juncture, then logically

the injury out of which that liability arose ought to be similarly referenced. This implies that DSC and appellant were seeking contribution from appellee for the same, rather than different, injuries.

This conclusion is reinforced by the decision of this court in *Heinrich* following remand from the Illinois Supreme Court. On consideration of the issue of whether implied indemnity existed in Illinois in light of the act, it was stated:

> "We believe that the effect of the Contribution Act was to eliminate the doctrine of implied indemnity. We so hold for two reasons. First, contribution is a full and fair remedy among all parties arguably *liable for injuries to plaintiffs.* ***
>
> *** Our supreme court has held that this equitable concept of relative responsibility applies regardless of the basis for a particular party's liability." (Emphasis added.) (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 296, 486 N.E.2d 1379.)

It stands to reason that if the remedy seeks to apportion liability for injuries to plaintiffs, then it is plaintiff's injury which is required by the Act rather than that suffered by the parties seeking contribution.

Although not cited by either party, we find this case analogous to *Morgan v. Kirk Brothers, Inc.* (1983), 111 Ill. App. 3d 914, 444 N.E.2d 504. In that case, plaintiff was a passenger in an automobile driven by Bailey. The automobile was involved in an accident with a truck owned by defendant Kirk Brothers and driven by its employee. Plaintiff was injured in that accident, and sued defendant in tort for her injuries. Defendant in turn filed a third-party complaint for contribution against the taverns that had served liquor to Bailey based on their Dramshop Act liability (Ill. Rev. Stat. 1981, ch. 43, par. 135 *et seq.*). Those third-party defendants sought to evade liability for contribution by asserting that they were not liable in tort for the same injury as defendant. The Second District Appellate Court held:

> "[The] argument that [the dramshop] cannot be considered a 'joint tortfeasor' with the negligent motorist does not address the full scope of the contribution statute. Although the act is styled 'An Act in relation to contribution among joint tortfeasors,' neither section 302(a) nor the published Legislative History requires that the tortfeasors be joint in the strict sense, that their tortious acts be simultaneous, or that they act in concert before contribution will lie. The only apparent requirement for contribution between co-tortfeasors is that recovery over be based on the same injury to person or property. Thus, the act permits contribution where co-tortfeasors are

concurrent [citations] or successive [citations] as long as the same injury is involved.

\* \* \*

Thus, contribution is not prevented by the fact that, in this case, the motorist and the Dramshops are subject to a common liability to an injured party resting on different theories rather than on a common standard of wrongdoing. \*\*\*

We note that decisions from other jurisdictions are in accord that the liability necessary for contribution is not limited to a common tort and need not be based upon the same ground for each defendant." (111 Ill. App. 3d 914, 918-19, 444 N.E.2d 504.)[1]

If contribution may be sought under the Act by a defendant tort-feasor from a third-party defendant, pursuant to a theory of recovery distinct from that pleaded against the tortfeasor directly, then as a necessary corollary the discharge provisions should follow parallel procedures. That is, a third-party defendant ought to be able to avail itself of the discharge provisions under the same terms that liability for contribution was asserted under the Act in the first place.

The Act expressly conditions the right to contribution upon a shared liability in tort, and further conditions that shared liability upon a common injury. (Ill. Rev. Stat. 1985, ch. 70, par. 302.) Although not sued in tort, appellee herein clearly qualified as a party potentially "liable in tort" for Christopher's death. (See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382.) The Act does not predicate that liability upon a common theory of recovery, and we cannot accommodate appellant by judicially amending the statute to impose such a requirement. In sum, we must reject appellant's construction of the "same injury" clause of the Act.

■ Appellant next asserts that the circuit court erred in concluding that appellee's settlement with DSC was entered into in good faith, as required for discharge under the Act. There are several components to appellant's challenge. Initially, appellant asserts that there

---

[1]We note that the Illinois Supreme Court recently rejected the result in *Morgan*, based on its conclusion that "under Illinois law, the defendant is not 'liable in tort' for purposes of the Contribution Act. Defendant's liability is limited to the exclusive, *sui generis* nontort liability of the Dramshop Act." (*Hopkins v. Powers* (1986), 113 Ill. 2d 206, 211.) We do not read that decision as support for the assertion that the right to contribution is dependent on the *theory* of recovery, or as a rejection of our conclusion on the meaning of the phrase "same injury." Rather, we believe it merely holds that contribution cannot be predicated on liability arising under the Dramshop Act, since such liability is nontortious and thus beyond the ambit of the Act.

was a lack of consideration to support appellee's settlement with DSC, a manifestation of appellee's purported bad faith. Appellant notes in this regard that DSC received none of the monies paid by appellee, but rather funnelled those funds directly to plaintiff. Appellant further contends that neither did appellee furnish plaintiff with any consideration in the settlement, in that appellee's preexisting workers' compensation liability exceeded the sum transferred to plaintiff by way of DSC in the settlement. Again, appellant asserts this as a manifestation of appellee's bad faith. The result of these errors, according to appellant, was to shift to appellant a liability in excess of its *pro rata* share, contrary to the Act's intent.

Appellant places primary reliance in this regard on *Le Master v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 442 N.E.2d 1367, a Fifth District decision. There, the court found, in analyzing the question of what constitutes a good-faith settlement, that the ratio of the settlement to the amount of damages eventually awarded was one appropriate measure of good faith. The court also concluded that, since the settling party (plaintiff's employer) was immune from tortious liability due to the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*), plaintiff's release of employer from liability did not provide for a good-faith settlement. Plaintiff had surrendered nothing in return for the cash payment he received in the settlement; rather, he released his employer from a liability that in no case could exist. In the court's view, this deprived the agreement of the requisite good faith.

In response, appellee herein has aptly cited the Fifth District's later decision in *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792. There, the court retreated from its earlier adoption of the so-called ratio analysis, stating:

> "The ratio test necessarily relies upon hindsight. It is virtually impossible to use an unknown factor; *i.e.*, the jury's verdict, to test good faith prior to trial." (124 Ill. App. 3d 80, 94, 463 N.E.2d 792.)

To the extent that appellant asserts that appellee's settlement was not entered into in good faith because it exposed appellant to substantially higher potential liability, *Le Master* seems to have been superceded and the ratio test contained therein abandoned. Indeed, in this regard several factors are notable. First, a party refusing to settle a case on agreed terms (such as appellant herein) always risks that he will be exposed to enhanced liability by that refusal. This is implicit in the very nature of a settlement: a party either compromises in return for the certainty of a fixed result, or gambles that he will obtain a

more advantageous result by taking his case to trial, knowing that he risks losing by that gamble. In the instant case, this is precisely what appellant's refusal to settle initially would have yielded. Indeed, if the instant case had gone to trial, appellant may well have obtained a verdict in its favor. Its 11th-hour decision to settle the case does not mean that it funded greater than its *pro rata* share of the liability. Second, appellant presumes throughout its arguments that its estimate of its own liability was somehow not merely justified, but the only viable apportionment that could be reached. We fail to see how anyone could possibly agree with such reasoning.

As to the second prong of *Le Master's* good-faith analysis, subsequent decisions again undermine appellant's conclusions. *Le Master's* determination that an employer is not a party "liable in tort" because of the exclusivity provisions of the Workers' Compensation Act was rejected by the Illinois Supreme Court in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382. There, the court held that employers were parties potentially liable in tort for an employee's injuries. Plaintiff's release must therefore have had value in *Le Master*, and had value herein; it thus constituted ample consideration to bind the parties to the release, and its acceptance constituted a good-faith settlement as between appellee and plaintiff.

As between DSC and appellee, again we must conclude that appellee surrendered value in consideration of the release from DSC's contribution complaint: appellee paid $140,000 for that release, which DSC turned over to plaintiff. Appellee also surrendered its workers' compensation lien on plaintiff's recovery, a value of at least an additional $56,000. The fact that DSC passed these monies on to plaintiff is altogether consistent with the nature of the Act and the entire concept of contribution, which has as its goal the apportionment of liability among tortfeasors to a plaintiff. DSC's action in turning the proceeds over to plaintiff was merely the realization of that apportionment. Moreover, there is no indication that plaintiff would have settled with DSC, the putative "fringe defendant" used by appellee to evade liability, for only the $5,000 that DSC ultimately paid. Rather, it is clear that it was only because of the additional $140,000 provided by appellee that plaintiff agreed to settle the case with DSC. Were we to find that appellee, who funded $140,000 of the $145,000 DSC paid, had not settled its liability, then we would be frustrating rather than furthering the Act's purpose of encouraging settlement. This we cannot do.

In the final analysis, plaintiff received a total settlement of $203,333.34 ($145,000 from DSC, of which appellee funded $140,000,

and $58,333.34 from appellant), plus a waiver of the workers' compensation lien. If one accepts appellant's assertion that DSC was only a fringe defendant of marginal liability, if any, then appellee's contribution represents a substantial portion of *appellant's* liability. Indeed, appellee's payment constitutes 70% of the total settled liability of both DSC and appellant, to say nothing of the waiver of the workers' compensation lien. Even under the ratio test for measuring a party's good faith contained in *Le Master*, it would hardly seem fair to condemn the *bona fides* of appellee where it paid roughly three times as much as the complaining party, appellant.

As a final point, appellant's argument would take from appellee and those in appellee's position the ability to settle their own cases, and would rather effectively place veto power over any settlement in the hands of the hardest bargainer, permitting settlement only where all the parties had agreed as to their respective liabilities. Again, since the Act by its clear terms contemplates settlement as a goal, based on the informed judgment of the litigants (see Ill. Rev. Stat. 1985, ch. 70, pars. 302, 303, 304), it seems contradictory to allow one litigant to hold the others hostage to its own intransigence.

For the above stated reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC, P.J., and STAMOS, J., concur.