Industrial Commission Division

May 30, 2000

No. 1-99-0323WC

______________________________________________________________________________

IN THE 

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

INDUSTRIAL COMMISSION DIVISION

______________________________________________________________________________

PALOS ELECTRIC COMPANY,
 ) Appeal from the 

) Circuit Court of 

Plaintiff-Appellant, ) Cook County, Illinois.

)

) No. 97 L 50610

)

THE INDUSTRIAL COMMISSION 
et al.
 )

) 

(Sentry Claims Service, a Department of ) Honorable

Sentry Insurance, a Mutual Company), ) JOHN A. WARD,

) Judge Presiding.

Defendant-Appellees. )

______________________________________________________________________________

JUSTICE HOLDRIDGE delivered the Opinion of the Court:

______________________________________________________________________________

This appeal follows the Commission's denial of Palos Electric's petition under the Worker's Compensation Act, 820 ILCS 305/19(o) (West 1993).  An employee of Palos alleged he suffered on the job injury and filed a claim for compensation under the Workers' Compensation Act.  Palos, believing the claim to be non-compensable, requested that the insurer deny the claim.  Sentry Claims Service settled the claim and paid the employee's the claim over Palos' objections.  Palos filed a §19(o) petition requesting Sentry purge their records of the expense related to the claim.  The Commission denied Palos' §19(o) petition and the Cook County Circuit Court affirmed the Commission's decision.  Palos now appeals the Commission's denial of its petition. 

Appellant, Palos Electric (Palos), employed Jeffrey Geibel (Geibel) as an electrician for approximately six years prior to July 25, 1994, the date of the alleged accident.  After having suffered from numbness and tingling in his hand for three and one-half years, on April 19, 1994, Geibel saw a physician and was diagnosed with bilateral carpal tunnel syndrome.  On July 26, 1994, he underwent surgery to correct his carpal tunnel syndrome.  All medical expenses related to Geibel's carpal tunnel syndrome diagnosis and treatment were paid by his group health insurance.  Geibel's treating physician, Dr. Henry Fuentes, a board certified orthopedic surgeon, offered no opinion as to the cause of Geibel's carpal tunnel but, on the group health insurance claim form, checked "no" in answer to the question "is condition related to [current or previous] employment."  In a written statement, Geibel described how Tom Bulow, one of the three brothers who owned Palos, asked him not to file for workers' compensation.  Tom asked him to accept a check from Palos that would get him through the four weeks he needed to be off work to recover from the surgery.  Tom Bulow later stated that the money was not intended to prevent Geibel from filing a workers' compensation claim but rather was a bonus for Geibel's good work.  Palos had paid Geibel a bonus on two prior occasions.  Geibel accepted $2000 for the time he would need to take off work and agreed to come back after four weeks of recovery.  After four weeks off, Geibel called Bulow to arrange his return to Palos but was told there was no work for him.  Geibel stated that he believed that he was not given work as a result of his injury and the bad feelings about the money that Palos had given him.   In September of 1994, Geibel resigned from Palos and, on October 1, began a new job as an electrician with another company.  Palos stated that it believed Geibel quit because he could not get along with his co-workers.  

On February 7, 1995, Geibel filed an Application for Adjustment of Claim (application) with the Illinois Industrial Commission against Palos for his bilateral carpal tunnel syndrome treatment and surgery.  On his application, Geibel indicated that his accident occurred on July 25, 1994, one day prior to his carpal tunnel surgery.  Palos forwarded the application to its insurer, Sentry Claims Service (Sentry).  On March 17, 1995, Palos wrote to Sentry stating that it believed the claim was non-compensable and should be denied.  Sentry undertook an investigation of the claim and hired an investigator to obtain the statements of Bill Bulow and Tom Bulow, Palos' principal officers.  Sentry also hired a physician, Dr. Richard Shin, to examine Geibel.  Dr. Shin agreed with Dr. Fuentes that Geibel did have carpal tunnel but did not conclude that the condition was caused or aggravated by his work as an electrician.  Sentry's senior claims adjustor originally took the position that the claim should not be paid because Geibel had symptoms of the condition, tingling and numbness, since 1991.  Sentry initially argued that the existence of symptoms over three years prior meant that Geibel's claim was time bared under the applicable three-year statute of limitations.  

Pursuant to the insurance contract between Palos and Sentry, Sentry entered into settlement negotiations with Geibel.
(footnote: 1)  Sentry and Geibel came to an agreement and settled the claim.  They agreed on compensation for 10% loss in each hand, 38 weeks of compensation at $396.89 per week.  A total lump sum payment of $15,071.82 was paid to Geibel in June of 1995.  The settlement was approved by the Illinois Industrial Commission.  Sentry did not pay Geibel any temporary total disability benefits or medical benefits.  Included in the settlement was a statement by Sentry and Geibel stipulating that the matter was in dispute and the settlement did not constitute an admission of liability on the part of Sentry or Palos.  Geibel is not a party to this case and would not be required to refund any payment received.  
See
 820 ILCS 305/19(o) (West 1993).         

After the settlement had been paid, Palos again wrote to Sentry contending that Geibel's injury had not been work related and should not have been compensated.  Palos requested that Sentry remove any record of the settlement from Palos' file so that no loss or expense would be reflected for the purpose of determining Palos' insurance rates.  Sentry responded by letter and informed Palos that it had two physicians' opinions, Geibel's treating physician, Dr. Fuentes,  and the independent physician hired by Sentry, Dr. Shin, both supporting Geibel's claim that his injury was work related.  Sentry refused to remove record of the loss from Palos' experience rating.   

On March 8, 1996, Palos filed a petition under 820 ILCS 305/19(o).  §19(o) allows an employer to challenge payments made by its insurance company for claims that the employer believes should not have been compensated.  Palos filed a §19(o) petition seeking: 1) a finding that Geibel's claim was not work related nor compensable; 2) an order requiring Sentry to purge its records of any loss or expense associated with Geibel's claim; 3) reimbursement of attorney's fees; 4) reimbursement on any payments made to Sentry for the rate adjustment fund or second injury fund; and 5) an order that any loss or expense related to this claim not be factored into Palos' future insurance rates with Sentry.  After oral arguments, the Commission, 
en banc
, unanimously denied Palos' §19(o) petition.  The Circuit Court of Cook County affirmed the decision of the Commission.  This appeal followed.      
 

Under §19(o) of the Workers' Compensation Act (the Act), an employer may be protected from increased insurance premiums which may result when an insurer settles a workers' compensation claim that should not have been compensable.  The purpose of this section is to prevent an employer from bearing the additional cost burden of increased insurance premiums if  its insurer opts to pay a non-compensable claim in order to save itself the cost of defense and administration.  
See
 Comments of Senator Bruce, State of Illinois, 81
st
 General Assembly, Senate Transcription Debates, July 1, 1980, at p. 24.  Section 19(o) allows the Commission to order an insurer who has paid a non-compensable claim to purge its records of any loss or expense associated with the claim, preventing the claim from being reflected in the employer's record for the purpose of determining future insurance rates.  820 ILCS 305/19(o) (West 1993). 

Palos first argues that Sentry violated §19(o) of the Act when it paid Geibel's workers' compensation claim.  820 ILCS 305/19(o) provides that:   

(o) By the 15th day of each month each insurer providing coverage for losses under this Act shall notify each insured employer of any compensable claim incurred during the preceding month and the amounts paid or reserved on the claim including a summary of the claim and a brief statement of the reasons for compensability. A cumulative report of all claims incurred during a calendar year or continued from the previous year shall be furnished to the insured employer by the insurer within 30 days after the end of that calendar year.  

The insured employer may challenge, in proceeding before the Commission, payments made by the insurer without arbitration and payments made after a case is determined to be noncompensable. If the Commission finds that the case was not compensable, the insurer shall purge its records as to that employer of any loss or expense associated with the claim, reimburse the employer for attorneys' fees arising from the challenge and for any payment required of the employer to the Rate Adjustment Fund or the Second Injury Fund, and may not reflect the loss or expense for rate making purposes. The employee shall not be required to refund the challenged payment. The decision of the Commission may be reviewed in the same manner as in arbitrated cases. No challenge may be initiated under this paragraph more than 3 years after the payment is made. An employer may waive the right of challenge under this paragraph on a case by case basis. 

(West 1993).   

This provision requires only that Sentry notify Palos of any compensable claim paid during the month prior and to provide a summary of the claim and the reasons for compensability.  There is no allegation in Palos' brief that Sentry failed to provide such notice or any such summary of the claim or compensability.  Additionally, the statute provides what the insurer may be required to do if the claim is deemed by the Commission to have been noncompensable.  In the present case, no finding of noncompensibility was ever made by the Commission.  We hold that mere payment of a claim is not enough to violate §19(o) as the statute speaks only to the required notice and the extent of information that must be provided to the employer.  For these reasons, Sentry could not have violated §19(o) where they paid a claim that it determined was compensable, notified Palos that payment was made, and where the Commission also found the claim to be compensable.

Palos next contends that the Commission erred by imposing the burden of proving the causal connection on the employer.  While normally the burden of proof is on a claimant to establish the elements of his right to compensation 
(Hansel & Gretel Day Care Ctr. v. Industrial Comm'n
, 215 Ill. App. 3d 284, (1991)), we hold that Palos, as the party challenging the compensation under §19(o), had the burden to prove that the claim was not compensable or to prove an alternative cause of the injury.  Although this is an issue of first impression in Illinois, we find guidance in other challenges to court orders and administrative decisions.  Courts have consistently held that the party challenging a court's or an agency's order carries the burden of proof.  
See
 
Murneigh v. Gainer
, 177 Ill. 2d 287 (1997) (The party challenging the constitutionality of legislation bears the burden of proof and must overcome the presumption of constitutionality); 
People v. ex rel. Hartigan v. Illinois Commerce Comm'n.
, 148 Ill. 2d 348, 367 (1992) (The party challenging the [Commerce] Commission's order carries the burden of proof); 
Rehg v. Illinois Department of Revenue
, 152 Ill. 2d 504 (1992) (All statutes are presumed to be constitutional and the challenging party bears the burden of clearly establishing the statute's unconstitutionality); 
Bennett v. City of Chicago
, 24 Ill. 2d 270, 273-274 (1962) (The party challenging the validity of the zoning ordinance bears the burden of proof)
.  Perhaps most persuasive is the line of cases holding that settlements terms are presumed to be in good faith and valid.  
See
  
Johnson v. Belleville Radiologists, Ltd.
, 221 Ill. App. 3d 100, 103 (1991); 
Pritchard v. SwedishAmerican Hospital
, 199 Ill. App. 3d 990, 996-97 (1990); 
Ruffino v. Hinze
, 181 Ill. App. 3d 827, 829 (1989);
 
Barreto v. City of Waukegan
, 133 Ill. App. 3d 119, 128 (1985)
.  Courts have held that the burden of proof is on the party challenging the good-faith nature of the settlement
.  
Pritchard
, 199 Ill. App. 3d at 996-997; 
Barreto
, 133 Ill. App. 3d at 128.  Under this guidance, we now hold that the party challenging an insurance settlement under §19(o) of the Act has the burden of proof to demonstrate the non-compensability of the claim.  To find otherwise would discourage insurance companies from settling claims for fear of challenge from their insured.  

Palos further argues that Sentry should not have compensated Geibel's claim.  If Geibel's claim was not related to his employment with Palos and therefore non-compensable, Sentry should have been ordered by the Commission to purge its records with reference to this claim, reimburse Palos certain costs associated with the claim, and to disregard the cost of the claim when determining Palos' future insurance rates.  The primary issue on appeal before this Court, therefore, is whether Geibel's claim was compensable under the insurance policy.  The injury is compensable if it was related to Geibel's employment.  

Whether or not an employee's claim should have been compensated is a question of fact and is therefore reviewed to determine if the decision was against the manifest weight of the evidence.  
Heath v. Industrial Comm'n.
, 256 Ill. App. 3d 1008, 1015-16 (1993).  A decision is against the manifest weight of the evidence when the opposite conclusion is clearly evident.  
Chicago Park District v. Industrial Comm'n.
, 263 Ill. App. 3d 835, 843 (1994).  Credibility of witnesses and causal connection are questions for the determination of the Industrial Commission.  
Certi-Serve, Inc. v. Industrial Comm'n
, 101 Ill. 2d 236, 244 (1984).  It is well established that in a Workers' Compensation claim, liability cannot rest upon imagination, speculation, or conjecture, but must arise out of facts established by a preponderance of the evidence, and further, that although a claimant's testimony standing alone may be sufficient to allow an award, an award is not justified if all of the facts and circumstances in the record preponderate in favor of the opposite conclusion.  
Allis-Chalmers Mfg. Co. v. Industrial Comm'n
, 35 Ill. 2d 367 (1966).  Resolving conflicts in the evidence, drawing inferences from testimony, and determining the credibility of witnesses and the weight to be given to their testimony are matters within the province of the Industrial Commission.  
Childress v. Industrial Comm'n
, 93 Ill. 2d 144 (1982).  

The injury must arise "out of" and "in the course of" employment to be compensable under the Act.  
Technical Tape Corp. v. Industrial Comm'n.
, 58 Ill. 2d 226, 230 (1974).  This occurs if some act or phase of the employment was a causative factor in the ensuing injury.  
Interlake, Inc. v. Industrial Comm'n.
, 86 Ill. 2d 168, 173 (1981).  A claimant is not required to prove that employment was the sole or principle cause, but only that the employment was a causative factor.   
Northern Illinois Gas Co. v. Industrial Comm'n.
, 148 Ill. App. 3d 48, 53 (1986).  A court will not set aside a finding of the Industrial Commission even though the court might have drawn different inferences and reached a different conclusion unless the Commission's decision is against the manifest weight of the evidence.  
Caterpillar Tractor Co. v. Industrial Comm'n
, 81 Ill. 2d 416 (1980).  Where the medical evidence is conflicting or of a nature which permits the reasonable drawing of differing inferences a court will not set aside an award solely because it might have made a different finding on the evidence or drawn inferences other than those reasonably drawn by the Industrial Commission.  
Zimmerly Constr. Co. v. Industrial Comm'n.
, 50 Ill. 2d 342 (1972). 

Both Palos and Sentry agree that Geibel was employed by Palos, suffered from the repetitive trauma injury carpal tunnel syndrome, and underwent surgery to correct the problem.  The dispute lies only in the 
cause
 of Geibel's condition.  If the injury was caused by his employment with Palos, Sentry was in the right to settle the claim.  If, however, the cause of the injury lay outside Geibel's employment, then Sentry settled a non-compensable claim and should have been  required by the Commission, under the provisions of §19(o), to purge their records of the claim and settlement and to reimburse Palos' costs.  Palos contends that it should be granted the protection provided under §19(o).  It believes that its present circumstance is the exact situation that the legislature had in mind when §19(o) was enacted.  Palos argues that it notified Sentry that it believed the claim to be non-compensable and that despite medical evidence to the contrary, Sentry settled the claim to save costs, passing expenses on to Palos in the form of higher premiums.  Palos further faults Sentry for allowing the claim to be handled by a claims adjustor instead of defending the claim via an attorney.  Palos takes the position that Geibel's injury was not work-related but rather occurred as a result of his personal activities outside work such as woodworking, drumming, and working on cars.  Palos cites the evidence offered by the two physician's reports as support for its position and contends that there is no expert medical evidence supporting Sentry's position that the claim was work related.  First, Dr. Fuentes, the physician who preformed Geibel's surgery, indicated that the injury was not work related.  Secondly, Dr. Shin, who was hired by Sentry, found that Geibel's carpal tunnel was "not caused or aggravated by his work as an electrician."  Finally, even if the two physicians' opinions are disregarded, Palos argues that Geibel failed to provide any medical expert opinion that demonstrated a causal link between his employment and his injury.  Palos argues that such evidence is required to show causation.             

Sentry contends that causation did exist between Geibel's carpal tunnel and his employment with Palos and points out that Geibel did not experience hand problems until nearly three years after he began his employment with Palos.  Geibel worked 10-12 hour days, 6-7 days per week and much of his work involved using his hands and wrists.  Sentry further argues that causation is a matter of the Commission's discretion and that they were free to weigh the evidence as they saw fit.  Sentry contends that the Commission was able to disregard expert medical evidence and find causation in Geibel's employment.  In terms of Dr. Shin's opinion, Sentry notes that Dr. Shin also opined that Geibel's carpal tunnel syndrome could also not be caused by woodworking, drumming, or working on cars.  Sentry further argues that no medical expert opinion is required to prove causation.  Sentry contends that proof of causation is a matter of discretion for the Commission and that rather than requiring expert medical opinion, the Commission was free to follow a "chain of events" to conclude there was causation between injury and Geibel's position at Palos.              

Applying the appropriate standard, it cannot be said that a conclusion opposite to the Commission's decision is clearly evident.  Geibel's injury appeared approximately three years into his employment with Palos.  The job with Palos involved primarily working with his hands, wrists and forearms.  Geibel worked long days, up to 12 hours a day, and worked six to seven days per week.  Evidence was offered to the Commission demonstrating that Palos knew that other electricians suffered from the same syndrome and that Palos wanted to prevent Geibel from filing a claim for workers' compensation.  The Commission determined that Geibel accepted the $2000 payment in lieu of filing for Workers' Compensation benefits as a result of pressure from Palos.     

With respect to the medical evidence, the Commission was presented with the opinions of two physicians who examined Geibel.  Neither named any cause for his illness but yet both diagnosed Geibel as suffering from bilateral carpal tunnel syndrome.  Dr. Shin's opinion was that neither Geibel's employment nor any of his known pass times caused his condition.  Dr. Fuentes gave no diagnosis of causation but, at best, did "check" the box claiming that his patient's injury was not work-related.  The Commission may have interpreted this as being 
Geibel's answer
 to the question, not the physician's.  If Geibel was under pressure at work not to "go comp," then it is likely that he might have answered "no" to the question and thus induce Dr. Fuentes to answer the same.  Furthermore, although Palos argues that expert medical evidence of causal connection between employment and injury is required to find causation, this Court has held that the causal connection may be established by a chain of events.  
Darling v. Industrial Comm'n.
, 176 Ill. App. 3d 186, 193 (1988).   

The Commission, while taking in the evidence on the whole, may draw their own conclusions.  Where the Commission heard evidence that electricians often suffer from carpal tunnel syndrome, that Palos management was aware that many electricians had their "wrists cut", and that Geibel's trouble began approximately three years into his employment with Palos, a reasonable determination was made on the issue of causal connection.  It is evident that the Commission could have found evidence that some act or phase of the employment was a causative factor in Geibel's injury.  
See
 
Interlake, Inc. v. Industrial Comm'n.
, 86 Ill. 2d 168, 173 (1981).  Therefore, it can not be said that it was against the manifest weight of the evidence for the Commission to find that Geibel's injury was caused by his employment with Palos.   It is at the discretion of the Commission to determine what evidence to give weight and credence.  The Commission was provided evidence demonstrating that Geibel's injury was a result of his employment with Palos.  The opposite conclusion is not clearly evident.  

Palos further argues that the Commission's decision, finding the settlement amount paid to employee reasonable, is contrary to law and should be reversed.
   
The Commission determined that the amount paid by Sentry to Geibel in settlement of his claim was reasonable.  Palos argues that this determination was beyond the Commission's authority because §19(o) places no monetary limit on the payment of a claim.  If the claim is noncompensable, then any amount paid to a claimant is too much, according to Palos.  

Pursuant to the statutes, Palos is correct in this assertion.  There is no requirement as to the Commission finding that an employee's compensation be determined to be a reasonable amount.  The only inquiry that the Commission should undertake is whether or not the claim was compensable.  However correct in this assertion Palos may be, the fact remains that the Commission's determination with respect to the compensability of the claim is not against the manifest weight of the evidence.  Therefore, the Commission made a harmless error in stating that the amount paid by Sentry was reasonable.  Although it was not necessary for the Commission to make this determination, the inclusion does not constitute a reason to reverse the determination of causation and compensability.  The Commission's determination on the compensability of Geibel's claim shall not be reversed on this ground.

Finally, Palos argues that Sentry should be estopped from taking opposing positions in the same case on the issues of statute of limitations and causal connection. When Geibel first filed his claim for compensation under Palos' policy with Sentry, Sentry's claims analyst believed the claim should be denied as it had been more than three years since Geibel's symptoms of the injury had first been felt.  Despite this, Sentry eventually paid the claim.  Palos contends that Sentry should not be allowed to take these two diametrically opposed positions with respect to Geibel's claim.  Additionally, Palos argues that Geibel's claim was time barred and Sentry should have defended this position.  Palos argues that the date the clock starts for statute of limitation purposes is the date the injury "manifests itself", i.e. the date the injury and its causal connection would have become plainly apparent to a reasonable person.  Palos notes that Geibel "first noticed problems with his hands approximately three years before seeing Dr. Fuentes."      

The mere fact that a claimant's injury was not sudden does not deprive a claimant of coverage; thus carpal tunnel syndrome, a gradually disabling condition, may be compensable under the Act.  
Castaneda v. Industrial Comm'n.
, 231 Ill. App. 3d 734 (1992).  Where an employee suffers a work-related injury due to repeated trauma, the date of the accidental injury is the date on which the fact of the injury and the causal relationship between the injury and the employment are plainly evident to a reasonable person.  
Peoria County Belwood Nursing Home v. Industrial Comm'n.
, 115 Ill.2d 524, 531 (1987).  Where the relationship of the repetitive-trauma injury to the employment is acknowledged by respondent as well as the fact claimant continued to perform his duties until the day prior to the surgery required to correct the condition, the Industrial Commission could reasonably determine the last day claimant worked was the date of accident. 
Oscar Mayer & Co. v. Industrial Comm'n.
, 176 Ill. App. 3d 607, 611 (1988).  The date of accident is a question of fact for the Industrial Commission to determine.  
Id.
  

Although Palos did not clearly acknowledge that there was a relationship between Geibel's carpel tunnel and his employment, it can be said that the Commission could have so found.  Palos paid Geibel $2000 for the time he had to take off and Geibel testified that Tom Bulow asked him not to file a workers' compensation claim.  This can be construed as Palos' acknowledgment of the relationship between Geibel's injury and his employment with Palos.  Therefore, the Commission, in setting the date of the accident, could have reasonably determined that Geibel's last day at work prior to surgery, June 25, 1994, was the date of the accident.  Moreover, even though Geibel noticed symptoms more than three years prior to filing his claim, it cannot be said that a reasonable person would have recognized a causal relationship between the first symptoms of an illness and his employment.  The record, in fact, indicates that Geibel at first believed that he was suffering from arthritis.  It is logical to conclude, therefore, that a reasonable person would not have recognized the causal connection between his employment and his injury until either the symptoms worsened or until he was diagnosed with carpal tunnel syndrome.   

While Sentry did originally take the position that the claim was time-barred, it did eventually decide to pay the claim.  Sentry changed their position on the statute of limitations issue prior to the initiation of this case.  Sentry made payment on the claim pursuant to the settlement agreement.  Palos then brought the case to the Commission under §19(o).  There is no reason for Sentry to be held to their initial inclination regarding the statute of limitations when it is evident that Sentry changed its viewpoint on the issue when it determined that the claim was compensable and thereafter made payment.  Sentry, therefore, cannot be estopped from asserting their current position on the issue of the applicability of the statute of limitations to Geibel's claim. 

For the foregoing reasons, the decision of the Commission, as confirmed by the Circuit Court, is hereby affirmed in all respects.  

Affirmed.   

HOLDRIDGE, J., with McCULLOUGH, P.J., and RARICK, COLWELL, and ZWICK, J.J., concurring.

FOOTNOTES
1:
"We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance.  We have the right to investigate and settle these claims, proceedings or suits.  We have no duty to defend a claim, proceeding or suit that is not covered by this insurance."  
Section c of the Workers' Compensation/Employers Liability insurance policy issued to Palos by Sentry.